[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14840
Non-Argument Calendar
_____

D.C. Docket No. 4:17-cv-00594-JHE


ROGER DALE BAILEY,

Plaintiff - Appellant,

versus

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

Defendant - Appellee.
_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(July 26, 2019)

Before GRANT, ANDERSON, and HULL, Circuit Judges.

PER CURIAM:

Roger Bailey appeals the district court's order affirming the Social Security Administration Commissioner's ("Commissioner") denial of his application for disability insurance benefits pursuant to 42 U.S.C. § 405(g).  Bailey has stage four cirrhosis of the liver, among other ailments.  On appeal, Bailey argues that: (1) the Administrative Law Judge ("ALJ") erred by failing to evaluate whether his cirrhosis met the disability requirements of Listing 5.05B or 5.05F for chronic liver disease and by not requesting an outside consultative examination to provide sufficient information for that evaluation; (2) the Appeals Council failed to show it had adequately evaluated his new evidence submitted to the Appeals Council but dated before the ALJ's decision; and (3) the Appeals Council also wrongly refused to review his new medical records dated after the ALJ's decision.  After review, we conclude the ALJ's decision is supported by substantial evidence and that the Appeals Council properly handled all of Bailey's new evidence and affirm.[1]

## I.  LISTING 5.05B AND 5.05F

---

[1]When an ALJ denies benefits and the Appeals Council denies review of that decision, we review the ALJ's decision as the Commissioner's final decision. Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).  We review the Commissioner's decision "only to determine whether it is supported by substantial evidence" and the Commissioner's application of legal principles de novo. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  Substantial evidence is "less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id.  We review de novo the Appeals Council's refusal to consider a claimant's new evidence. Washington v. Soc. Sec. Admin., 806 F.3d 1317, 1320-21 (11th Cir. 2015).

To be eligible for social security disability benefits, a claimant bears the burden of proving that he is disabled.  Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  An ALJ follows a five-step process to determine whether a claimant is disabled, which includes: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether he has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals the Listings in 20 C.F.R. § 404, Subpart P ("Appendix 1"); (4) if not, whether he has the residual functional capacity ("RFC") to perform past relevant work despite the impairment; and (5) if not, whether, based on his RFC, age, education, and work experience, he can perform other work found in the national economy.  Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011); 20 C.F.R. § 404.1520(a)(4)(i)–(v).  The claimant bears the burden to prove the first four steps, after which the burden shifts to the Commissioner to prove the fifth step.  Washington v. Comm'r of Soc. Sec., 906 F.3d 1353, 1359 (11th Cir. 2018).

At the third step, "[f]or a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990).  "If the impairment meets or equals one of the listed impairments, the claimant is

3

conclusively presumed to be disabled." Bowen v. Yuckert, 482 U.S. 137, 141, 107

S. Ct. 2287, 2291 (1987).  If not, the ALJ's evaluation proceeds to the fourth step.

Id.

"To meet a Listing, a claimant must have a diagnosis included in the

Listings and must provide medical reports documenting that the conditions meet

the specific criteria of the Listings and the duration requirement." Wilson v.

Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (quotation marks omitted).  Listing

5.05 addresses chronic liver disease.  Appendix 1, Pt. A1 § 5.05.  Subsections B

and F of Listing 5.05 refer to the requirements for chronic liver disease with either

ascites or hepatic encephalopathy, respectively, that must be proved for the

claimant's impairment to "meet" Listing 5.05.  Id. § 5.05B, F. [2]  Subsection B

provides the following as to ascites:

> B. Ascites . . . not attributable to other causes, despite continuing treatment as prescribed, present on at least two evaluations at least 60 days apart within a consecutive 6–month period.  Each evaluation must be documented by:
>
> 1. Paracentesis or thoracentesis; or
> 2. Appropriate medically acceptable imaging or physical examination and one of the following:
>> a. Serum albumin of 3.0 g/dL or less; or
>> b. International Normalized Ratio (INR) of at least 1.5.

---

[2]Ascites is the build-up of fluid in the space between the lining of the abdomen and abdominal organs, generally caused by high blood pressure in the blood vessels of the liver and low levels of the protein albumin.  MedlinePlus, https://medlineplus.gov/ency/article/000286.htm (last visited June 5, 2019).  Hepatic encephalopathy is the loss of brain function that occurs when the liver cannot sufficiently remove toxins from the blood.  MedlinePlus, https://medlineplus.gov/ency/article/000302.htm (last visited June 5, 2019).

Id. § 5.05B.

Subsection F provides the following as to hepatic encephalopathy:

F. Hepatic encephalopathy . . . with 1 and either 2 or 3:

> 1. Documentation of abnormal behavior, cognitive dysfunction, changes in mental status, or altered state of consciousness (for example, confusion, delirium, stupor, or coma), present on at least two evaluations at least 60 days apart within a consecutive 6–month period; and
> 2. History of transjugular intrahepatic portosystemic shunt (TIPS) or any surgical portosystemic shunt; or
> 3. One of the following occurring on at least two evaluations at least 60 days apart within the same consecutive 6–month period as in F1:
>> a. Asterixis or other fluctuating physical neurological abnormalities; or
>> b. Electroencephalogram (EEG) demonstrating triphasic slow wave activity; or
>> c. Serum albumin of 3.0 g/dL or less; or
>> d. International Normalized Ratio (INR) of 1.5 or greater.

Id. § 5.05F.

Here, the ALJ found that Bailey had severe impairments of cirrhosis of the liver with ascites, hepatic encephalopathy, and obesity, as well as numerous non-severe impairments, including alcohol dependency, depression, and anxiety. At step three, the step at issue in this appeal,[3] the ALJ determined that Bailey's

---

[3]Bailey does not challenge the ALJ's determinations at steps one and two or the ALJ's determinations at steps four and five that, although Bailey did not have the RFC to perform any past relevant work, he was capable of working jobs that exist in significant numbers in the national economy, including marker, cashier, and inspector/packer.

impairments, individually and in combination, did not meet or equal any

impairment in the Listings, as follows:

> I considered [Bailey's] impairments individually and in combination, and these impairments do not meet or equal any of the medical or mental listings. Further, no examining or treating source has reported that [Bailey] has an impairment that meets the criteria of a listed impairment, and no State agency medical or psychological consultant or other designee of the Commissioner has reported that [Bailey] has an impairment that medically equals the criteria of a listed impairment.

The ALJ did not make specific findings as to any impairments in the Listings.

On appeal, Bailey argues that the ALJ failed to evaluate whether he met the

criteria of Listing 5.05B or 5.05F and should have obtained a consultative medical

examination because whether his cirrhosis met Listing 5.05 "is a complicated

medical issue."[4]  As to the first argument, this Court has said that even when an

"ALJ [does] not explicitly state that the appellant's impairments were not

contained in the listings, such a determination [may be] implicit in the ALJ's

decision."  See Hutchison v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986).  While

the Listings in "Appendix 1 must be considered in making a disability

determination, it is not required that the Secretary mechanically recite the evidence

leading to her determination."  Id. (concluding that the ALJ's finding that

---

[4]On appeal, Bailey argues only that the ALJ should have determined whether his impairments met Listing 5.05B or F, not whether his impairments equaled Listing 5.05B or F, and therefore has abandoned any argument as to the equivalency issue.  See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014).

claimant's impairments did not meet a listing was implicit given that the ALJ's statement of the law "recognized that an affirmative determination regarding the applicability of any Appendix 1 listing, the third step of the disability analysis, would require a determination that the appellant was disabled," and the record reflected that the ALJ reached the final two steps in the analysis).

Here, the ALJ identified as a severe impairment Bailey's cirrhosis of the liver with both ascites, which relates to Listing 5.05B, and with hepatic encephalopathy, which relates to Listing 5.05F.  The ALJ also explicitly found that Bailey's impairments, individually and in combination, did not meet any listed impairment.  The ALJ then proceeded to steps four and five of the sequential analysis.  Thus, the ALJ's explicit finding that Bailey's impairments did not meet a listed impairment included implicit findings that Bailey's cirrhosis of the liver with ascites and hepatic encephalopathy did not meet Listing 5.05B or F.  Under our precedent, the ALJ was not required to make more explicit findings as to Listing 5.05B and F.  See id.[5]

---

[5]While specific findings as to the Listings in Appendix 1 are not required, we have noted "that it would be helpful to appellate courts if the ALJ would specifically tie his findings to particular listings that the claimant has argued."  See Barron v. Sullivan, 924 F.2d 227, 230 n.3 (11th Cir. 1991).  Given the ALJ's step-two finding that Bailey's cirrhosis of the liver with ascites and hepatic encephalopathy was a severe impairment, more specific findings would have been helpful here.

Furthermore, substantial evidence supports the ALJ's implicit findings that Bailey's cirrhosis of the liver did not meet Listing 5.05B or F. The medical records established that Bailey was diagnosed with ascites and hepatic encephalopathy. However, with regard to Listing 5.05B, those records did not show that the ascites was not attributable to other causes or continued despite prescribed treatment, a requirement of Listing 5.05B. The treatment routinely recommended for Bailey was to stop drinking. Bailey did not follow those recommendations but instead continued to regularly consume significant amounts of alcohol, even after seeking inpatient treatment for his alcoholism.

The medical records also did not show that Bailey's ascites was documented by paracentesis or thoracentesis, as required by Listing 5.05B(1), or by a serum albumin of "3.0 g/dL or less" or an INR of "at least 1.5," as required by Listing 5.05B(2) and also by Listing 5.05F(3)(c) and (d). Rather, the record evidence showed Bailey's albumin levels exceeded 3.0 g/dL, as they ranged from 3.8 to 4.6 g/dL, and his INR levels were under the 1.5 threshold, as they ranged from 1.10 to 1.22. While Bailey highlights other lab results, such as elevated BUN, neutron, MCV, and ALT levels and low RBC and calcium levels, those results are not relevant to Listing 5.05B or F.

Also with regard to Listing 5.05F, the medical records did not show that Bailey's hepatic encephalopathy was coupled with confusion on at least two

8

evaluations sixty days apart, as required by 5.05F(1). In fact, the record showed that Bailey had a single diagnosis of hepatic encephalopathy on April 29, 2015, with Bailey self-reporting occasional confusion at that office visit. Accordingly, substantial evidence supports the ALJ's finding that Bailey did not meet his burden at step three to show that his liver impairments met Listing 5.05B or F.

As to Bailey's second argument, because the record was sufficient for the ALJ to determine whether Bailey's liver impairments "met" Listing 5.05B and F, the ALJ was under no obligation to order a consultative examination or obtain expert medical testimony. See Doughty v. Apfel, 245 F.3d 1274, 1281 (11th Cir. 2001) ("The regulations normally require a consultative examination only when necessary information is not in the record and cannot be obtained from the claimant's treating medical sources or other medical sources."); Wilson v. Apfel, 179 F.3d 1276, 1278 (11th Cir. 1999) (concluding ALJ had no obligation to obtain additional expert medical testimony when the record is sufficient for a determination).

## II.  NEW EVIDENCE SUBMITTED TO THE APPEALS COUNCIL

Generally, a claimant may present new evidence at each stage of the administrative review process. 20 C.F.R. §§ 404.900(b), 404.970(b) (2016); see

also <u>Washington v. Soc. Sec. Admin.</u>, 806 F.3d 1317, 1320 (11th Cir. 2015).[6] Although the Appeals Council has the discretion to deny review of an ALJ's decision, 20 C.F.R. § 404.967, the Appeals Council must consider any "new, material, and chronologically relevant evidence" the claimant submits, and "must review the case if 'the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" <u>Ingram v. Comm'r of Soc. Sec. Admin.</u>, 496 F.3d 1253, 1261 (11th Cir. 2007) (quoting 20 C.F.R. § 404.970(b) (2016)). When the Appeals Council erroneously refuses to consider new evidence, it commits legal error, and remand is appropriate. <u>Washington</u>, 806 F.3d at 1321.

New evidence must not be cumulative of other evidence in the record. <u>See</u> <u>Caulder v. Bowen</u>, 791 F.2d 872, 877 (11th Cir. 1986). The evidence is chronologically relevant if it "relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.970(b) (2016). The evidence is material if "a reasonable possibility exists that the evidence would change the administrative result." <u>Hargress v. Soc. Sec. Admin, Comm'r</u>, 883 F.3d 1302, 1309 (11th Cir. 2018).

---

[6]Effective January 17, 2017, 20 C.F.R. §§ 404.900 and 404.970 were amended, placing limitations on the Appeals Council's consideration of new evidence by, <u>inter alia</u>, requiring the claimant to show good cause for not submitting the evidence to the ALJ. <u>See</u> 81 Fed. Reg. 90987, 90992, 90994 (Dec. 16, 2016). Here, the Appeals Council did not require a showing of good cause, and the parties do not argue that the new amendments apply to, or affect the outcome of, Bailey's appeal. Thus, we apply the 2016 version of the regulations and leave for another day the implications of these amendments.

When the Appeals Council considers the "new evidence but denie[s] review because, even in light of the new evidence, there [is] no error in the ALJ's decision," there is generally no requirement for "the Appeals Council to provide a detailed discussion of a claimant's new evidence when denying a request for review." See Mitchell v. Comm'r, Soc. Sec. Admin., 771 F.3d 780, 783-84 (11th Cir. 2014). If, on the other hand, the Appeals Council decides to review the ALJ's decision, it must adequately evaluate the new evidence rather than "'perfunctorily adhere[]'" to the ALJ's decision. See Bowen v. Heckler, 748 F.2d 629, 634 (11th Cir. 1984) (quoting Epps v. Harris, 624 F.2d 1267, 1273 (5th Cir. 1980)).

## A.    New Evidence Dated Before the ALJ's Decision

Here, the Appeals Council denied Bailey's request for review. In doing so, the Appeals Council stated that it had considered Bailey's "additional evidence listed on the enclosed Order of the Appeals Council," which listed records from Huntsville Hospital dated September 18, 2015, and records from Lakeshore Clinic covering July 20, 2015 through August 10, 2015. These new medical records, which predated the ALJ's December 4, 2015 decision, were also added to the record.[7] The Appeals Council explained that it had "considered whether the

---

[7]The Lakeshore Clinic records pertained to an office visit on July 20, 2015, in which Bailey complained of depression and tearfulness, for which he was taking Zoloft. The attending staff prescribed Brintellix, with a two-week follow-up. The treatment notes from this office visit are consistent with other medical records in the administrative record, including other records from Lakeshore Clinic, that were considered by the ALJ. On August 3, 2015, Bailey called to

[ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently in the record" and "found that this information does not provide a basis for changing the [ALJ's] decision."

The Appeals Council's explanation for its decision to deny Bailey's request for review based on this new evidence was sufficient. The Appeals Council was not required to give a more detailed rationale for why Bailey's new evidence did not undermine the ALJ's decision. See Mitchell, 771 F.3d at 784. Because the Appeals Council considered Bailey's pre-ALJ-decision evidence from Huntsville Hospital and Lakeshore Clinic but denied review, Bailey's reliance on Epps is misplaced. See id. at 783 (explaining that Epps does not control where the Appeals Council denies review rather than affirms the ALJ). Furthermore, as in Mitchell, Bailey's new medical records from Huntsville Hospital and Lakeshore Clinic did not undermine the substantial evidence supporting the ALJ's decision and did not render the denial of benefits erroneous.

## B.    New Evidence Dated After the ALJ's Decision

---

report that the Brintellix samples he had been given did not seem to make a difference and that he would go back on Zoloft.

The Huntsville Hospital records are financial records that note that Bailey was seen: (1) on September 30, 2015 for cirrhosis, constipation, blood in his stool, and abdominal pain; (2) on September 25, 2015 for alcoholic cirrhosis of the liver; (3) on September 18, 2015 for back pain; and (4) on May 18, 2014 for rib pain. In addition, a discharge summary from Bailey's September 18, 2015 visit for back pain noted diagnoses for abdominal ascites and liver injury. These records do not include treatment notes or lab results from any of Bailey's visits.

12

In denying review, the Appeals Council also refused to consider other evidence Bailey submitted dated after the ALJ's decision and returned this evidence to him.  As to this evidence, the Appeals Council stated that it had "looked at the records from Lakeshore Clinic, covering the period December 10, 2015 through August 15, 2016 (2 pages)."  The Appeals Council noted that the ALJ "decided [Bailey's] case through December 1, 2015,"[8] and explained that Bailey's "new information [was] about a later time."  The Appeals Council concluded therefore, that the new information did "not affect the decision about whether [Bailey was] disabled beginning on or before December 1, 2015."  The Appeals Council advised Bailey that if he wanted the SSA to consider whether he was disabled after December 1, 2015, he would need to apply again.  The Appeals Council did not accept this post-December 1, 2015 evidence in the administrative record, but rather "return[ed] the evidence to [Bailey] to use in [his] new claim."

The government correctly points out that Bailey did not raise this particular argument in the district court, arguing only about his new evidence predating the ALJ's hearing decision.  We "need not address" a claimant's argument if he failed to raise the issue in the district court.  Crawford v. Comm'r of Soc. Sec., 363 F.3d

---

[8]The December 1, 2015 date appears to be a typographical error.  The ALJ's decision was that Bailey was not disabled from August 22, 2013, his alleged onset date, to December 4, 2015, the date of the ALJ's decision.  This error has no bearing on this appeal, as Bailey's new evidence is dated after December 4, 2015 as well.

13

1155, 1161 (11th Cir. 2004); Stewart v. Dep't of Health & Human Servs., 26 F.3d 115, 115 (11th Cir. 1994) ("As a general principle, [we] will not address an argument that has not been raised in the district court.").

In any event, even if this issue were properly before the Court, our review is limited to the certified record, and the post-December 4, 2015 Lakeshore Clinic records are not in the certified record. See Cherry v. Heckler, 760 F.2d 1186, 1193 (11th Cir. 1985). Moreover, Bailey argues only that the fact that these records post-date the ALJ's decision "does not necessarily make them chronologically irrelevant." Bailey does not actually claim these records are chronologically relevant, much less explain why they are chronologically relevant. Cf. Washington, 806 F.3d at 1322-23 (concluding that medical records dated after the ALJ's decision were chronologically relevant because they contained doctor's opinions based on the claimant's statements regarding the relevant period before the ALJ). Accordingly, Bailey has not shown that the Appeals Council erroneously refused to consider the two pages of records from Lakeshore Clinic, covering the period December 10, 2015 through August 15, 2016.

**AFFIRMED.**

14